Jeffrey S. Ratliff
RANSOM, GILBERTSON,
MARTIN & RATLIFF, LLP
8401 NE Halsey Street Suite 208
Portland, OR 97220
T: 503-226-3664
F: 503-243-6716
rgmr1500@gmail.com

## UNITED STATES DISTRICT COURT
## DISTRICT OF OREGON

| | |
|---|---|
| RIHANNA SHAHROHKIMANESH, Individually and on behalf of all others similarly situated, | **Case No:** |
| Plaintiff, | **CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** |
| v. | **JURY TRIAL DEMANDED** |
| HARBORSIDE INC., PETER BILODEAU, ANDREW BERMAN, KEITH LI, ADAM SZWERAS, and MATTHEW HAWKINS, | |
| Defendants. | |

Plaintiff Rihanna Shahrohkimanesh ("Plaintiff"), individually and on behalf of all other

persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against

Defendants (defined below), alleges the following based upon personal knowledge as to

Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon,

inter alia, the investigation conducted by and through her attorneys, which included, among

other things, a review of the Defendants' public documents, announcements, public filings, wire

and press releases published by and regarding Harborside Inc. ("Harborside" or the

1 - CIVIL CLASS ACTION COMPLAINT

"Company"), and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      This is a class action on behalf of persons or entities who purchased or otherwise acquired publicly traded Harborside securities between July 2, 2019 and August 12, 2020, inclusive (the "Class Period"). Plaintiff seeks to recover compensable damages caused by Defendants' violations of the federal securities laws under the Securities Exchange Act of 1934 (the "Exchange Act").

## JURISDICTION AND VENUE

2.      The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

3.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act (15 U.S.C. §78aa).

4.      This Court has jurisdiction over each defendant named herein because each defendant has sufficient minimum contacts with this judicial district so as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice. Harborside also operates a retail location in this judicial district.

5.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as the alleged misstatements entered and the subsequent damages took place in this judicial district and the Company maintains a retail location at 645 River Rd #3, Eugene, Oregon 97404, in this judicial district. The Company also

2 - CIVIL CLASS ACTION COMPLAINT

maintained another location at 1436 SE Powell Blvd, Portland, Oregon 97202, during the Class Period until April 2020.

6.    In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails and interstate telephone communications.

## PARTIES

7.    Plaintiff, as set forth in the accompanying Certification, purchased the Company's securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosure.

8.    Defendant Harborside purports to be a vertically-integrated cannabis company.

9.    The Company is incorporated in Canada and its head office is located at 2100 Embarcadero, Suite 202, Oakland, California 94606. Harborside securities trade on the OTC Pink market under the ticker symbol "HSDEF."

10.    Defendant Peter Bilodeau ("Bilodeau") has served as the Company's interim Chief Executive Officer ("CEO") since October 2019 and Chairman of the Board throughout the Class Period. On information and belief, Defendant Bilodeau is a resident of Canada.

11.    Defendant Andrew Berman ("Berman") served as the Company's ("CEO") during the Class Period from January 2018 until October 2019.

12.    Defendant Keith Li ("Li") served as the Company's Chief Financial Officer during the Class Period from December 2017 until December 2019 and has served as the Company's Vice President of Finance since December 2019. On information and belief, Defendant Li is a resident of Canada.

13.     Defendant Adam Szweras ("Szweras") has served as a Director of the Company throughout the Class Period. On information and belief, Defendant Szweras is a resident of Canada.

14.     Defendant Matthew Hawkins ("Hawkins") has served as a Director of the Company throughout the Class Period.

15.     Defendants Bilodeau, Berman, Li, Szweras, and Hawkins are collectively referred to herein as the "Individual Defendants."

16.     Each of the Individual Defendants:

    (a)     directly participated in the management of the Company;

    (b)     was directly involved in the day-to-day operations of the Company at the highest levels;

    (c)     was privy to confidential proprietary information concerning the Company and its business and operations;

    (d)     was directly or indirectly involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein;

    (e)     was directly or indirectly involved in the oversight or implementation of the Company's internal controls;

    (f)     was aware of or recklessly disregarded the fact that the false and misleading statements were being issued concerning the Company; and/or

    (g)     approved or ratified these statements in violation of the federal securities laws.

4 - CIVIL CLASS ACTION COMPLAINT

17.    The Company is liable for the acts of the Individual Defendants and its employees under the doctrine of *respondeat superior* and common law principles of agency because all of the wrongful acts complained of herein were carried out within the scope of their employment.

18.    The scienter of the Individual Defendants and other employees and agents of the Company is similarly imputed to the Company under *respondeat superior* and agency principles.

19.    19.    The Company and the Individual Defendants are referred to herein, collectively, as the "Defendants."

### SUBSTANTIVE ALLEGATIONS
**Materially False and Misleading**
**Statements Issued During the Class Period**

20.    On July 2, 2019, Harborside (then named Lineage Grow Company Ltd.), filed with the Canadian securities regulatory authorities its Unaudited Condensed Interim Consolidated Financial Statements For The Three Months Ended April 30, 2019 And 2018 (the "1Q 19 Report"), which was signed by Defendant Bilodeau and Szweras.

21.    The 1Q 19 Report provided the following financial information regarding the Company:

**LINEAGE GROW COMPANY LTD.**
Unaudited Condensed Interim Consolidated Statements of Financial Position
(Expressed in Canadian Dollars)

| | Note | As at April 30, 2019 $ | As at January 31, 2019 $ |
|---|---|---|---|
| **Assets** | | | |
| **Current Assets** | | | |
| Cash | | 370,587 | 578,528 |
| Other receivables | | 32,456 | 321,035 |
| Inventories | 6 | 112,919 | 112,674 |
| Prepaid expenses | 7 | 26,072 | 60,132 |
| **Total Current Assets** | | 542,034 | 1,072,369 |
| **Non-Current Assets** | | | |
| Investments and advances | 8 | 3,096,315 | 2,799,045 |
| Right-of-use assets | 9 | 593,641 | - |
| Intangible assets | 4, 10 | 558,269 | 546,666 |
| Goodwill | 4, 10 | 893,753 | 875,176 |
| **Total Assets** | | 5,674,012 | 5,293,256 |
| **Liabilities** | | | |
| **Current Liabilities** | | | |
| Accounts payable and accrued liabilities | 11 | 656,427 | 532,354 |
| Convertible debentures - current | 12 | - | 73,141 |
| Derivative liabilities | 12 | 182,106 | 289,693 |
| Note payable - current | 13 | 2,108,493 | 2,116,773 |
| Lease payable - current | 14 | 55,096 | - |
| Tax payable | | 131,050 | 27,998 |
| **Total Current Liabilities** | | 3,133,172 | 3,039,959 |
| **Non-Current Liabilities** | | | |
| Convertible notes payable | 12 | 1,015,876 | 937,397 |
| Lease payable | 14 | 539,775 | - |
| Deferred tax liability | | 157,070 | 145,547 |
| **Total Liabilities** | | 4,845,893 | 4,122,903 |
| **Shareholders' Equity** | | | |
| Share capital | 15 | 13,022,090 | 12,939,533 |
| Conversion component of convertible debentures | 12 | - | 8,824 |
| Reserve for warrants | 16 | 1,659,898 | 1,659,898 |
| Reserve for share-based payments | 17 | 820,301 | 782,960 |
| Accumulated other comprehensive (loss) income | | (62,909) | 38,627 |
| Accumulated deficit | | (14,611,261) | (14,349,489) |
| **Total Shareholders' Equity** | | 828,119 | 1,170,353 |
| **Total Liabilities and Shareholders' Equity** | | 5,674,012 | 5,293,256 |

22.     The 1Q 19 Report provided the following "Statement of Compliance":

***The Company's unaudited condensed interim consolidated financial statements,
including comparatives, have been prepared in accordance with International
Financial Reporting Standards ("IFRS")*** as issued by the International
Accounting Standards Board ("IASB"). These unaudited condensed interim
consolidated financial statements have been prepared in accordance with
International Accounting Standards ("IAS") 34 – *Interim Financial Reporting.*
Accordingly, they do not include all of the information and disclosures required
by IFRS for annual financial statements. . . .

These unaudited condensed interim consolidated financial statements were
reviewed, approved and authorized for issue by the Company's Board of Directors
on July 2, 2019.

(Emphasis added.)

23.     Also on July 2, 2019, the Company filed with the Canadian securities regulatory

authorities its Management's Discussion And Analysis For The Three Months Ended April 30, 2019 (the "1Q 19 MD&A"). The 1Q 19 MD&A included the financial information from the 1Q 19 Report and included the following statement:

**Management's Responsibility for Financial Information**

Management is responsible for all information contained in this MD&A. ***The Company's unaudited condensed interim consolidated financial statements have been prepared in accordance with IFRS and include amounts based on management's informed judgments and estimates.*** The financial and operating information included in this MD&A is consistent with that contained in the unaudited condensed interim consolidated financial statements in all material aspects.

The Audit Committee has reviewed the unaudited condensed interim consolidated financial statements and this MD&A with management of the Company. The Board of Directors has approved the unaudited condensed interim consolidated financial statements and this MD&A on the recommendation of the Audit Committee.

(Emphasis added.)

24.     Also on July 2, 2019, certifications signed by Defendants Berman and Li were filed with the Canadian securities regulatory authorities confirming their review of the 1Q 19 Report and 1Q 19 MD&A, attesting to the accuracy of the reporting, and attesting that the reporting was a fair representation in all material respects.

25.     On August 29, 2019, Harborside filed with the Canadian securities regulatory authorities its Unaudited Condensed Interim Consolidated Financial Statements For The Three And Six Months Ended June 30, 2019 And 2018 (the "2Q 19 Report"), which was signed by Defendants Bilodeau and Hawkins.

26.     The 2Q 19 Report provided the following financial information regarding the Company:

| | Notes | As at June 30, 2019 $ | As at December 31, 2018 $ |
|---|---|---|---|
| **Assets** | | | |
| **Current Assets** | | | |
| Cash | | 19,348,258 | 17,000,008 |
| Accounts receivable | 5 | 1,836,062 | 643,305 |
| Inventories | 6 | 6,767,836 | 3,692,851 |
| Biological assets | 7 | 3,827,596 | 3,682,832 |
| Prepaid expenses | 8 | 1,632,299 | 1,318,992 |
| Other current assets | | 953,747 | 438,764 |
| Notes receivable | 21 | - | 1,538,469 |
| **Total Current Assets** | | **32,965,797** | **28,315,519** |
| **Non-Current Assets** | | | |
| Investments and advances | 9 | 4,963,126 | 1,891,992 |
| Property, plant and equipment | 10 | 12,708,078 | 10,401,569 |
| Right-of-use assets | 11 | 430,993 | - |
| Deposits | 12 | 1,067,853 | 290,253 |
| Intangible assets | | 415,905 | - |
| Goodwill | 4 | 7,579,421 | - |
| **Total Assets** | | **60,121,172** | **40,799,055** |
| **Liabilities** | | | |
| **Current Liabilities** | | | |
| Accounts payable and accrued liabilities | 13 | 13,628,521 | 12,686,002 |
| Notes payable and accrued interest - current | 14 | 380,623 | 1,591,377 |
| Derivative liabilities - current | 15 | 118,499 | - |
| Lease payable - current | 25 | 42,328 | - |
| Income tax payable | 12 | 89,038 | 49,311 |
| Deferred gain - current | 22 | 38,553 | 38,553 |
| Accrued dividend | | - | 973,008 |
| **Total Current Liabilities** | | **14,297,562** | **15,338,251** |
| **Non-Current Liabilities** | | | |
| Convertible notes payable | 15 | 783,566 | 17,679,766 |
| Derivative liabilities | 4,16 | 278,817 | 22,426,008 |
| Warrant derivative liability | 16 | 9,215,034 | 5,700,757 |
| Provisions | 17 | 15,370,000 | - |
| Lease payable | 25 | 396,977 | - |
| Deferred tax liability | | 117,015 | - |
| Deferred gain | 22 | 234,534 | 253,810 |
| Deferred rent | 25 | 174,800 | 129,200 |
| **Total Liabilities** | | **40,868,305** | **61,527,772** |
| **Shareholders' Equity** | | | |
| Share capital | 18 | 83,879,641 | 26,970,505 |
| Contributed surplus | 19 | (5,702,614) | (8,302,375) |
| Reserve for warrants | 20 | 2,245,264 | 988,772 |
| Accumulated other comprehensive income | | 16,289 | - |
| Accumulated deficit | | (61,185,713) | (40,385,641) |
| **Total Shareholders' Equity** | | **19,252,867** | **(20,728,739)** |
| **Total Liabilities and Shareholders' Equity** | | **60,121,172** | **40,799,055** |

27.    The 2Q 19 Report provided the following "Statement of Compliance":

*The Company's unaudited condensed interim consolidated financial statements, including comparatives, have been prepared in accordance with International Financial Reporting Standards ("IFRS")* as issued by the International Accounting Standards Board ("IASB"). These unaudited condensed interim consolidated financial statements have been prepared in accordance with International Accounting Standards ("IAS") 34 – *Interim Financial Reporting*. Accordingly, they do not include all of the information and disclosures required by IFRS for annual financial statements.

These unaudited condensed interim consolidated financial statements were reviewed, approved and authorized for issue by the Company's Board of Directors on August 27, 2019.

(Emphasis added.)

28.    The 2Q 19 Report affirmed that FLRish was accounted for the same way as the

Company and incorporated FLRish's earlier financial statements stating: "The accounting policies applied in these unaudited condensed interim consolidated financial statements are the same as those noted in FLRish's audited consolidated financial statements for the year ended December 31, 2018, and in Lineage's audited consolidated financial statements for the year ended January 31, 2019, unless otherwise noted below."

29.     Also on August 29, 2019, the Company filed with the Canadian securities regulatory authorities its Management's Discussion And Analysis For The Three And Six Months Ended June 30, 2019 (the "2Q 19 MD&A"). The 2Q 19 MD&A included the financial information from the 2Q 19 Report and included the following statements:

**Disclosure of Internal Controls over Financial Reporting**

Management has established processes to provide them sufficient knowledge to support representations that they have exercised reasonable diligence that (i) the unaudited condensed interim consolidated financial statements do not contain any untrue statement of material fact or omit to state a material fact required to be stated or that is necessary to make a statement not misleading in light of the circumstances under which it is made, as of the date of and for the periods presented by the unaudited condensed interim consolidated financial statements; and (ii) the unaudited condensed interim consolidated financial statements fairly present in all material respects the financial condition, results of operations and cash flows of the Company, as of the date of and for the periods presented.

\*       \*       \*

**Management's Responsibility for Financial Information**

Management is responsible for all information contained in this MD&A. The Company's unaudited condensed interim consolidated financial statements have been prepared in accordance with IFRS and include amounts based on management's informed judgments and estimates. The financial and operating information included in this MD&A is consistent with that contained in the unaudited condensed interim consolidated financial statements in all material aspects.

The Audit Committee has reviewed the unaudited condensed interim consolidated financial statements and this MD&A with management of the Company. The

9 - CIVIL CLASS ACTION COMPLAINT

Board of Directors has approved the unaudited condensed interim consolidated financial statements and this MD&A on the recommendation of the Audit Committee.

**Approval**

The Board of Directors of the Company has approved the disclosure contained in this MD&A.

30.     Also on August 29, 2019, certifications signed by Defendants Berman and Li were filed with the Canadian securities regulatory authorities confirming their review of the 2Q 19 Report and 2Q 19 MD&A, attesting to the accuracy of the reporting, and attesting that the reporting was a fair representation in all material respects.

31.     On November 21, 2019, Harborside filed with the Canadian securities regulatory authorities its Unaudited Condensed Interim Consolidated Financial Statements For The Three And Nine Months Ended September 30, 2019 And 2018 (the "3Q 19 Report"), which was signed by Defendant Bilodeau and Hawkins.

32.     The 3Q 19 Report provided the following financial information regarding the Company:

| | Notes | As at September 30, 2019 $ | As at December 31, 2018 $ |
|---|---|---|---|
| **Assets** | | | |
| **Current Assets** | | | |
| Cash | | 16,626,218 | 17,000,008 |
| Accounts receivable | 5 | 1,484,147 | 643,303 |
| Inventories | 6 | 4,160,980 | 3,692,851 |
| Biological assets | 7 | 2,712,445 | 3,682,832 |
| Prepaid expenses | 8 | 1,864,383 | 1,657,756 |
| Notes receivable | 21 | – | 1,538,469 |
| **Total Current Assets** | | 26,848,173 | 28,215,219 |
| **Non-Current Assets** | | | |
| Investments and advances | 9 | 4,509,514 | 1,881,992 |
| Property, plant and equipment | 10 | 13,196,642 | 10,401,569 |
| Right-of-use assets | 11 | 414,897 | – |
| Deposits | | 57,863 | 290,253 |
| Intangible assets | | 416,906 | – |
| Goodwill | 4 | 7,579,421 | – |
| **Total Assets** | | 53,024,605 | 40,799,033 |
| **Liabilities** | | | |
| **Current Liabilities** | | | |
| Accounts payable and accrued liabilities | 13 | 13,571,680 | 12,686,002 |
| Notes payable and accrued interest - current | 13 | – | 1,591,377 |
| Derivative liabilities - current | 14 | 107,662 | – |
| Lease payable - current | 24 | 44,306 | – |
| Income tax payable | | 2,089,938 | 49,311 |
| Deferred gain - current | 21 | 38,623 | 38,553 |
| Accrued dividend | | – | 973,008 |
| **Total Current Liabilities** | | 15,851,209 | 15,338,251 |
| **Non-Current Liabilities** | | | |
| Convertible notes payable | 14 | 822,071 | 17,679,766 |
| Derivative liabilities | 4,15 | 65,888 | 22,426,008 |
| Warrant derivative liability | 15 | 436,860 | 5,700,737 |
| Provisions | 16 | 16,370,000 | – |
| Lease payable | 24 | 388,145 | – |
| Deferred tax liability | | 98,279 | – |
| Deferred gain | 21 | 224,895 | 253,810 |
| Deferred rent | 24 | 197,600 | 129,200 |
| **Total Liabilities** | | 33,463,937 | 61,527,772 |
| **Shareholders' Equity** | | | |
| Share capital | 18 | 71,126,662 | 14,197,070 |
| Contributed surplus | 19 | 8,628,496 | 4,471,060 |
| Reserve for warrants | 20 | 2,246,264 | 988,772 |
| Accumulated other comprehensive loss | | (40,879) | – |
| Accumulated deficit | | (62,486,835) | (40,385,641) |
| **Total Shareholders' Equity** | | 19,673,668 | (20,728,739) |
| **Total Liabilities and Shareholders' Equity** | | 53,024,605 | 40,799,033 |

33.     The 3Q 19 Report provided the following "Statement of Compliance":

***The Company's unaudited condensed interim consolidated financial statements, including comparatives, have been prepared in accordance with International Financial Reporting Standards ("IFRS")*** as issued by the International Accounting Standards Board ("IASB"). These unaudited condensed interim consolidated financial statements have been prepared in accordance with International Accounting Standards ("IAS") 34 – *Interim Financial Reporting.* Accordingly, they do not include all of the information and disclosures required by IFRS for annual financial statements.

(Emphasis added.)

34.     The 3Q 19 Report affirmed that FLRish was accounted for the same way as the Company and incorporated FLRish's earlier financial statements stating: "The accounting policies applied in these unaudited condensed interim consolidated financial statements are the same as those noted in FLRish's audited consolidated financial statements for the year ended

11 - CIVIL CLASS ACTION COMPLAINT

December 31, 2018, and in Lineage's audited consolidated financial statements for the year ended January 31, 2019, unless otherwise noted below."

35.     Also on August 29, 2019, the Company filed with the Canadian securities regulatory authorities its Management's Discussion And Analysis For The Three And Nine Months Ended September 30, 2019 (the "3Q 19 MD&A"). The 3Q 19 MD&A included the financial information from the 3Q 19 Report and included the following statements:

**Disclosure of Internal Controls over Financial Reporting**

Management has established processes to provide them sufficient knowledge to support representations that they have exercised reasonable diligence that (i) the unaudited condensed interim consolidated financial statements do not contain any untrue statement of material fact or omit to state a material fact required to be stated or that is necessary to make a statement not misleading in light of the circumstances under which it is made, as of the date of and for the periods presented by the unaudited condensed interim consolidated financial statements; and (ii) the unaudited condensed interim consolidated financial statements fairly present in all material respects the financial condition, results of operations and cash flows of the Company, as of the date of and for the periods presented.

*          *          *

**Management's Responsibility for Financial Information**

Management is responsible for all information contained in this MD&A. The Company's unaudited condensed interim consolidated financial statements have been prepared in accordance with IFRS and include amounts based on management's informed judgments and estimates. The financial and operating information included in this MD&A is consistent with that contained in the Q3 2019 Financial Statements in all material aspects.

The Audit Committee has reviewed the Company's unaudited condensed interim consolidated financial statements and this MD&A with management of the Company. The Board has approved the Company's unaudited condensed interim consolidated financial statements and this MD&A on the recommendation of the Audit Committee.

**Approval**

The Board of Directors of the Company has approved the disclosure contained in

this MD&A.

36.    Also on November 21, 2019, certifications signed by Defendants Bilodeau and Li were filed with the Canadian securities regulatory authorities confirming their review of the 3Q 19 Report and 3Q 19 MD&A, attesting to the accuracy of the reporting, and attesting that the reporting was a fair representation in all material respects.

37.    On March 25, 2020, Harborside issued a press release entitled "Harborside Inc. Addresses COVID-19 and Provides Business Update" touting its positioning and business during the COVID-19 pandemic stating the following, in pertinent part:

> Bilodeau continued, "We are pleased that Governor Newsom has deemed cannabis to be an 'essential' part of the infrastructure of California which will protect access to cannabis products from Harborside and other cannabis operators throughout the State. *We would like to assure you that all relevant Harborside operations and retail store locations remain fully operational*, as we meet the significant customer activity levels across our retail "footprint".
>
> "*While the situation remains fluid, we are seeing record weekly revenues and average basket sizes across our California locations and significant improvement in profitability as our ongoing business transformation initiatives begin to take hold. We are confident that Harborside has the right focus and commitment to build sustainable shareholder value over the long-term.*"
>
> **COVID-19 Update**
>
> The Company is closely monitoring the developments of COVID-19 and focusing its resources on navigating and adapting to the situation as it unfolds. As part of the essential infrastructure of the State of California, Harborside continues to operate mostly uninterrupted and has been implementing its business continuity plan. This includes the continued operation of the Company's four retail stores in California, the two Terpene Station stores in Oregon, and the Harborside Farms cultivation facility in Salinas, which has also been deemed as an essential service in medicinal crop production.
>
> \*      \*      \*
>
> **Business Update**
>
> . . . *Harborside's executive team is actively managing costs as they relate to*

*ongoing operations and revenue streams. Costs and expenses are being monitored on an ongoing basis to ensure the Company maximizes profitability.*

The pressures brought on by the COVID-19 pandemic further reinforce *Harborside's ongoing mandate to monitor all financial decision-making with the strictest vigor*, which includes:

- Continuing to align labor costs with customer demand
- Reviewing expenses to ensure all non-essential operational expenses are cut
- Placing a near-term hold on non accretive operational and capital projects
- Suspending all non-essential supplier contracts

This financial management is with a goal of maintaining the strength of the ongoing operations and the long-term viability of Harborside.

(Emphasis added.)

38.     The statements referenced in ¶¶20-37 above were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the Company's business, operational and financial results, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) Harborside had undisclosed material weaknesses and insufficient financial controls; (2) Harborside's previously issued financial statements were false and unreliable; (3) Harborside's earlier reported financial statements would need restatement; (4) as a result of the foregoing and subsequent reporting delays, Harborside's Canadian stock trading would be suspended; (5) Harborside downplayed the negative impacts of errors and delays regarding its financial statements; and (6) as a result, Defendants' public statements were materially false and/or misleading at all relevant times.

## THE TRUTH EMERGES

39.     On May 29, 2020, the Company issued a press release entitled "Harborside Inc. Announces Intent to Restate Certain Historical Financial Statements and Delay in Filing Annual

14 - CIVIL CLASS ACTION COMPLAINT

Financial Statements and MD&A" which stated the following, in pertinent part, regarding the
newly announced needed financial restatements and the suspension of trading of its Canadian
shares:

> OAKLAND, CA and TORONTO, May 29, 2020 /PRNewswire/ - Harborside Inc.
> ("Harborside" or the "Company") (CSE: HBOR), a California-focused, vertically
> integrated cannabis enterprise, has announced today that due primarily to changes
> in the application of accounting treatments related to certain transactions by its
> reverse takeover acquirer, FLRish Inc., *the previously issued financial statements
> for the fiscal years ended December 31, 2017 and 2018 and the interim periods
> ended March 31, 2019, June 30, 2019 and September 30, 2019, and any
> corresponding management's discussion and analyses (collectively, the
> "Restated Documents"), will be restated and reissued. The primary accounting
> changes addressed by the restatements will include the reclassification and
> re-measurement of certain financial instruments and the change in the
> accounting for a common control acquisition to a business combination under
> IFRS 3. The accounting changes will include the recognition of fair value
> adjustments as part of the acquisition.* The effect of the restatements does not
> impact the Company's ongoing operations, cash position, or its expected positive
> operating results for Fiscal 2019 and First Quarter 2020 as described in more
> detail below.
>
> *Harborside intends to file its Restated Documents as soon as possible,
> beginning with the 2018/2017 FLRish restated audited annual financial
> statements which are expected to be filed no later than July 10, 2020. However,
> no assurance can be given that the anticipated timing of filing will be met due
> to the impact of the COVID-19 pandemic*, as well as the need for the Company's
> auditors to complete their audit work, among other things. The Restated
> Documents will replace and supersede the respective previously-filed financial
> statements and management's discussion and analysis for such periods
> (collectively, the "Previous Documents"). *The Previous Documents should no
> longer be relied upon.*
>
>      *   *   *
>
> **Timing of Annual Filings**
>
> *Due to the continued impact of COVID-19,* Harborside anticipates the filing of
> its audited annual financial statements and corresponding management's
> discussion and analysis (collectively, the "Annual Filings") for the financial year
> ended December 31, 2019 to be delayed beyond the required filing deadline: (i)
> under Parts 4 and 5 of National Instrument 51-102 – *Continuous Disclosure
> Obligations* and pursuant to National Instrument 52-109 – *Certification of*

*Disclosure in Issuer's Annual and Interim Filings*, being April 29, 2020; as extended by (ii) the temporary blanket relief implemented by the Ontario Securities Commission Ontario Instrument 51-502 (the "Blanket Relief"), being June 15, 2020 (the "Filing Deadline").

***The Company intends to continue to work diligently and expeditiously with its auditors and expects to file the Annual Filings as soon as possible, and in any event no later than July 10, 2020.*** The Company currently does not anticipate any delay in filing its interim financial statements, management's discussion and analysis, and the related officer certifications for the financial period ended March 31, 2020, ***before its filing deadline under NI 51-102, as extended by the Blanket Relief, on July 14, 2020.*** Other than as previously disclosed by the Company and herein with this press release, Harborside confirms that there have been no material business developments since the date of its third quarter interim financial statements that were filed on November 21, 2019, other than as a result of the impact of restatement disclosed above.

**Management Cease Trade Order**

In light of the delay in filing of the Annual Filings prior to the Filing Deadline, the Company is providing this default announcement in accordance with National Policy 12-203 Management Cease Trade Orders ("NP 12-203"). The Company has made an application to the Ontario Securities Commission (the "OSC"), as principal regulator of the Company, for a management cease trade order ("MCTO") under NP 12-203 in respect of the anticipated default regarding the Annual Filings. The granting of the MCTO is at the discretion of the Ontario Securities Commission. ***The issuance of the MCTO generally will not affect the ability of persons who have not been directors, officers or insiders of the Company to trade in their securities.*** In the event that the MCTO is granted, it will be in effect until the default is remedied. The Company intends to follow the provisions of the Alternative Information Guidelines set out in NP 12-203, including the issuance of bi-weekly default status reports in the form of news releases, for as long as the Company remains in default. The Company confirms as of the date of this news release that there is no insolvency proceeding against it and there is no other material information concerning the affairs of the Company that has not been generally disclosed.

(Emphasis added.)

40.     On this news, shares of Harborside fell 2% per share over the next two trading

days to close at $0.45 per share on June 2, 2020, damaging investors.

41.     On June 22, 2020, during trading hours, Harborside issued a press release entitled

"Harborside Inc. Provides Update to Management Cease Trade Order and Cease Trade Order"
which stated the following, in pertinent part, regarding its delayed restatements and the
continued suspension of trading of its Canadian shares:

> As previously disclosed, *the delay in completing the Annual Filings occurred*
> *due to the impact of COVID-19.* The Restated Audit and Restated Interim are due
> primarily to changes in the application of accounting treatments related to certain
> transactions by its reverse takeover acquirer, FLRish, Inc. Notwithstanding the
> delays in completing the filings, there is not expected to be a material impact to
> the assets currently owned by the Company, its current cash position or the
> positive financial performance the Company has reported so far this year.
>
> *The Company continues to expect to file the Annual Filings and Restated Audit*
> *no later than July 10, 2020* and will apply to have the CTO revoked. Although
> the CTO resulted in trading in the subordinate voting shares of the Company
> being suspended on the Canadian Securities Exchange (the "CSE"), the CTO is
> not expected to result in the Company being delisted from the CSE and the
> Company expects trading to resume on the CSE shortly after the revocation of the
> CTO.
>
> The Company expects that a MCTO will remain in place until the Restated
> Interims are filed. The Company continues to work diligently with its auditor to
> file the Annual Filings, Restated Audit and Restated Interims as quickly as
> possible. . . .
>
> *As required under Canadian securities laws, the Company will provide a*
> *further update on or about June 30, 2020.* Additionally, to the knowledge of the
> Company, there have been no material business developments as of the date of
> this news release that have not been generally disclosed.

(Emphasis added.)

42.     On this news, shares of Harborside fell 12% per share over the rest of the trading
day and the next full trading day to close at $0.45 per share on June 23, 2020, further damaging
investors.

43.     On June 30, 2020 issued a press release entitled "Harborside Inc. Provides
Update on MCTO and Financial Statement Filings" which stated the following, in pertinent part,

regarding its delayed restatements and the continued suspension of trading of its Canadian shares:

> . . . as previously announced, the Company is relying on the blanket exemptions issued by provincial securities commissions due to COVID-19 to extend the date of filing its interim financial report for the three months ended March 31, 2020 and related management's discussion and analysis (collectively, the "Interim Filings"). The Company does not expect to file the Interim Filings before the expiry of the 45 day extension on July 14, 2020 . [sic]
>
> ***The Company continues to expect to file the Annual Filings, as well as the financial statements for the fiscal years ended December 31, 2017 and 2018 (the "Restated Audit"), no later than July 10, 2020*** and will apply to have its previously disclosed cease trade order (the "CTO") revoked. The Company expects trading to resume on the CSE shortly after the revocation of the CTO.
>
> *            *            *
>
> As required under Canadian securities laws, the Company will provide a further update on or about July 14, 2020 . [sic] Additionally, to the knowledge of the Company, there have been no material business developments as of the date of this news release that have not been generally disclosed.

(Emphasis added.)

44.    On this news, shares of Harborside fell 7% per share, to close at $0.49 per share on July 1, 2020, further damaging investors.

45.    On July 10, 2020 issued a press release entitled "Harborside Inc. Provides Update on Financial Statement Filings" which stated the following, in pertinent part, regarding its delayed restatements and the continued suspension of trading of its Canadian shares:

> The Company continues to work diligently and expeditiously with its auditors to finalize the Financial Statements. ***Despite significant effort and progress to date, the Company does not expect to complete the filing of the Restated Audit and Annual Filings by its previously expected filing date of July 10, 2020.*** As previously disclosed, ***the delay in completing the filing of the Financial Statements is due to the unprecedented impact of the COVID-19 pandemic on the Company***, its employees, and its ability to rely on timely information in relation to its financial reporting obligations.

*In the interim, the Company continues to be subject to the previously disclosed cease trade order (the "CTO").* The Company expects trading to resume on the CSE shortly after the revocation of the CTO.

After careful consideration, the Company has also decided to postpone its annual meeting of shareholders to a later date in 2020. The Company intends to rely on the temporary blanket relief provided by the Canadian Securities Administrators, including the exemptive relief contained in Ontario Instrument 51-504 – *Temporary Exemptions from Certain Requirements to File or Send Securityholder Materials* of the Ontario Securities Commission to postpone the public filing of its executive compensation disclosure until such time as it is filed and delivered to shareholders as part of the Company's information circular relating to its 2020 annual meeting of shareholders. The Company will provide further information on its annual meeting when an appropriate date has been determined.

As required under Canadian securities laws, the Company will provide a further update on or about July 24, 2020. Additionally, to the knowledge of the Company, there have been no material business developments as of the date of this news release that have not been generally disclosed.

(Emphasis added.)

46.     On this news, shares of Harborside fell 13% per share, to close at $0.46 per share on July 13, 2020, on unusually heavy trading volume, further damaging investors.

47.     On August 12, 2020, after market hours, Harborside filed with the Canadian securities regulatory authorities its Unaudited Restated Condensed Interim Consolidated Financial Statements for the Three and Six Months Ended June 30, 2019 and 2018 (the "Restated 2Q 19 Report"). The Restated 2Q 19 Report provided the following, in pertinent part, regarding the restatement:

The Company has restated its previously reported unaudited condensed interim consolidated financial statements for the three and six months ended June 30, 2019, and all related disclosures. . . .

The restatement was primarily due to the acquisitions of Patients Mutual Assistance Collective Corporation ("PMACC") and San Jose Wellness ("SJW") on January 7, 2019, which was deemed for accounting purposes to be a business combination that must be accounted for as an acquisition under IFRS 3 – *Business Combinations*. Further, the restatements included in the FLRish, Inc. Amended

and Restated Consolidated Financial Statements for the years ended the December 31, 2018 and 2017 (the "2018 Restated Financial Statements") contributed to the adjustments required.

The Company has, amongst other things, increased the quantum reserved in relation to the provision for taxes purported to be owing by PMACC and SJW for historical periods. The provision was reflected retrospectively as part of the purchase accounting (see Note 4), in part as a result of a U.S. Tax Court decision in October 2019 (see Note 17).

### Summary of the Impact of the Restatements on the Consolidated Financial Statements

The following is a summary of the impact of the restatements on the previously issued unaudited condensed interim consolidated statements of financial position, statements of loss and comprehensive loss, statement of changes in shareholders' equity (deficit) and statements of cash flows as of June 30, 2019 and December 31, 2018 and for the three and six months ended June 30, 2019 and 2018 (note supplementary information and non-cash investing and financing activities were excluded from the originally reported statements of cash flows, but are included in the restated statements of cash flows):

**Unaudited Condensed Interim Consolidated Statement of Financial Position**

| | As at June 30, 2019 | | | |
|---|---|---|---|---|
| | As Reported $ | Note 2.1 | Adjustment $ | As Restated $ |
| **Assets** | | | | |
| **Current Assets** | | | | |
| Cash and cash equivalents | 19,348,258 | (8) | (301,794) | 19,046,464 |
| Accounts receivable, net | 1,836,062 | (9) | 412,032 | 2,248,094 |
| Inventories | 5,767,836 | (3),(8) | (3,400,401) | 2,367,435 |
| Biological Assets | 3,827,595 | (1) | (3,056,636) | 770,961 |
| Prepaid expenses | 1,632,209 | (8) | (541,373) | 1,090,806 |
| Other current assets | 553,747 | (8) | (553,747) | - |
| **Total Current Assets** | 32,965,707 | | (7,441,917) | 25,523,880 |
| | | | | |
| **Non-Current Assets** | | | | |
| Investment and advances | 4,963,125 | (1) | 200,150 | 5,163,275 |
| Property, plant and equipment | 12,708,078 | (2) | 7,730,537 | 20,437,615 |
| Right-of-use assets | 430,963 | (3) | 927,788 | 1,358,751 |
| Deposits | 1,057,853 | (8) | (1,000,000) | 57,853 |
| Intangible assets | 415,905 | (1) | 11,737,964 | 12,153,869 |
| Goodwill | 7,579,421 | (1) | 43,431,209 | 51,010,630 |
| **Total Assets** | 60,121,172 | | 95,584,701 | 155,705,873 |
| | | | | |
| **Liabilities and Shareholders' Equity (Deficit)** | | | | |
| **Liabilities** | | | | |
| **Current Liabilities** | | | | |
| Accounts payable and accrued liabilities | 13,628,321 | (8) | 19,875 | 13,648,196 |
| Notes payable and accrued interest - current | 380,623 | (8) | 70,377 | 450,900 |
| Convertible notes payable - current | - | (8) | 150,000 | 150,000 |
| Derivative liabilities - current | 118,400 | | - | 118,400 |
| Lease payable - current | 42,328 | (3) | 318,034 | 360,362 |
| Income tax payable | 89,058 | (1),(8) | 1,076,021 | 1,165,079 |
| Provisions | - | (1) | 35,305,542 | 35,305,542 |
| Deferred gain - current | 38,553 | (2) | (38,553) | - |
| **Total Current Liabilities** | 14,297,562 | | 36,910,596 | 51,207,858 |
| | | | | |
| **Long Term Liabilities** | | | | |
| Convertible notes payable | 783,566 | (8) | (150,000) | 633,566 |
| Notes payable and accrued interest | - | (2) | 9,948,933 | 9,948,933 |
| Derivative liabilities | 278,813 | (4) | 4,288,602 | 4,567,419 |
| Warrant derivative liability | 9,215,034 | (4) | (9,215,034) | - |
| Provisions | 15,370,000 | (1) | (15,370,000) | - |
| Lease payable | 996,977 | (3) | 1,527,657 | 2,524,634 |
| Deferred tax liability | 117,015 | (1) | 15,621,852 | 15,738,867 |
| Deferred gain | 234,334 | (2) | (234,554) | - |
| Deferred rent | 174,800 | (2) | (174,800) | - |
| **Total Liabilities** | 40,868,305 | | 43,452,972 | 84,321,277 |
| | | | | |
| **Shareholders' Equity (Deficit)** | | | | |
| Share capital | 83,879,641 | (5),(8) | 10,371,363 | 94,251,004 |
| Contributed surplus | (5,702,614) | (5),(8) | 15,053,495 | 9,350,881 |
| Reserve for warrants | 2,245,264 | (6),(8) | (1,057,487) | 1,187,777 |
| Accumulated other comprehensive income | 16,289 | (6) | (16,289) | - |
| Accumulated deficit | (81,243,713) | (7) | 27,780,947 | (53,409,966) |
| **Total Shareholders' Equity (Deficit)** | 19,252,867 | | 52,131,729 | 71,384,596 |
| **Total Liabilities and Shareholders' Equity (Deficit)** | 60,121,172 | | 95,584,701 | 155,705,873 |

20 - CIVIL CLASS ACTION COMPLAINT

48.     Also on August 12, 2020, after market hours, Harborside filed with the Canadian

securities regulatory authorities its Unaudited Restated Condensed Interim Consolidated

Financial Statements for the Three and Nine Months Ended September 30, 2019 and 2018. The

Restated 2Q 19 Report provided the following, in pertinent part, regarding the restatement:

> The Company has restated its previously reported unaudited condensed interim consolidated financial statements for the three and nine months ended September 30, 2019, and all related disclosures. The restatement followed a review of the Company's consolidated financial statements and accounting records that was undertaken as part of the audit of the consolidated financial statements for the year ended December 31, 2019. This restatement has been prepared with information to August 12, 2020.
>
> The restatement was primarily due to the acquisitions of Patients Mutual Assistance Collective Corporation ("PMACC") and San Jose Wellness ("SJW") on January 7, 2019, which was deemed for accounting purposes to be a business combination that must be accounted for as an acquisition under IFRS 3 – Business Combinations. Further, the restatements included in the FLRish, Inc. Amended and Restated Consolidated Financial Statements for the years ended the December 31, 2018 and 2017 (the "2018 Restated Financial Statements") contributed to the adjustments required.
>
> The Company has, amongst other things, increased the quantum reserved in relation to the provision for taxes purported to be owing by PMACC and SJW for historical periods. The provision was reflected retrospectively as part of the purchase accounting (see Note 4), in part as a result of a U.S. Tax Court decision in October 2019 (see Note 17).
>
> ### *Summary of the Impact of Restatements on the Consolidated Financial Statements*
>
> The following is a summary of the impact of the restatements on the previously issued unaudited condensed interim consolidated statements of financial position, statements of loss and comprehensive loss, statement of changes in shareholders' equity (deficit) and statements of cash flows as of September 30, 2019 and December 31, 2018 and for the three and nine months ended September 30, 2019 and 2018 (note supplementary information and non-cash investing and financing activities were excluded from the originally reported statements of cash flows, but are included in the restated statements of cash flows):

Unaudited Condensed Interim Consolidated Statement of Financial Position

| | As at September 30, 2019 | | | |
|---|---|---|---|---|
| | As Reported | Note 7.3 | Adjustments | As Restated |
| | $ | | $ | $ |
| **Assets** | | | | |
| **Current Assets** | | | | |
| Cash and cash equivalents | 16,626,218 | (8) | (287,419) | 16,338,799 |
| Accounts receivable, net | 1,434,147 | (8) | 37,469 | 1,571,616 |
| Inventories | 4,160,680 | (1),(8) | (1,505,359) | 2,655,625 |
| Biological assets | 2,712,465 | (8) | (1,518,220) | 1,194,130 |
| Prepaid expenses | 1,854,383 | (8) | (369,727) | 1,494,656 |
| **Total Current Assets** | 26,848,173 | | (3,590,357) | 25,254,816 |
| **Non-Current Assets** | | | | |
| Investment and advances | 4,509,514 | (1) | (789,126) | 3,670,328 |
| Property, plant and equipment | 13,199,642 | (2) | 7,595,178 | 20,794,820 |
| Right-of-use assets | 414,097 | (3) | 788,558 | 1,202,655 |
| Deposits | 57,855 | | - | 57,855 |
| Intangible assets | 415,505 | (1) | 51,737,994 | 52,153,499 |
| Goodwill | 7,579,421 | (1) | 43,431,209 | 51,010,630 |
| **Total Assets** | 53,024,805 | | 99,170,366 | 152,144,971 |
| **Liabilities and Shareholders' Equity (Deficit)** | | | | |
| **Liabilities** | | | | |
| **Current Liabilities** | | | | |
| Accounts payable and accrued liabilities | 13,571,650 | (8) | 787,490 | 14,359,140 |
| Convertible notes payable - current | | (8) | 150,000 | 150,000 |
| Derivative liabilities - current | 107,662 | (8) | (18,776) | 88,936 |
| Lease payable - current | 44,306 | (3) | 280,950 | 325,256 |
| Income tax payable | 2,080,658 | (1),(8) | 472,328 | 2,561,366 |
| Provisions | | (1) | 35,902,771 | 35,902,771 |
| Deferred gain - current | 38,553 | (2) | (38,553) | - |
| **Total Current Liabilities** | 15,851,209 | | 37,536,230 | 53,387,459 |
| **Long-Term Liabilities** | | | | |
| Convertible notes payable | 823,071 | (8) | (150,000) | 673,071 |
| Notes payable and accrued interest | - | (2) | 10,074,736 | 10,074,736 |
| Derivative liabilities | 65,888 | (4) | 350,432 | 416,320 |
| Warrant derivative liability | 436,850 | (4) | (436,850) | - |
| Provisions | 15,370,600 | (1) | (15,370,000) | - |
| Lease payable | 385,143 | (3) | 1,761,376 | 2,146,519 |
| Deferred tax liability | 98,270 | (1) | 15,582,853 | 15,681,141 |
| Deferred gain | 234,895 | (2) | (234,895) | - |
| Deferred rent | 197,600 | (2) | (197,600) | - |
| **Total Liabilities** | 33,452,837 | | 48,936,300 | 82,379,257 |
| **Shareholders' Equity (Deficit)** | | | | |
| Share capital | 71,125,663 | (5),(8) | 23,156,747 | 94,282,400 |
| Contributed surplus | 8,628,456 | (5),(8) | 1,015,655 | 9,644,111 |
| Reserve for warrants | 2,245,264 | (6),(8) | (1,057,487) | 1,187,777 |
| Accumulated other comprehensive income | (40,879) | (8) | 40,879 | - |
| Accumulated deficit | (62,386,535) | (7) | 27,038,272 | (35,348,565) |
| **Total Shareholders' Equity (Deficit)** | 19,571,668 | | 50,194,066 | 69,765,734 |
| **Total Liabilities and Shareholders' Equity (Deficit)** | 53,024,805 | | 99,130,366 | 152,144,971 |

49.    On this news, shares of Harborside fell over 5%, to close at $0.67 per share on August 13, 2020, further damaging investors.

50.    As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

51.    Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class consisting of all persons other than defendants who acquired Harborside securities publicly traded on the OTC Pink market during the Class Period, and who were damaged thereby (the "Class"). Excluded from the Class are Defendants, the officers and directors of Harborside and its subsidiaries, members of the Individual

Defendants' immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

52.     The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Harborside securities were actively traded on the OTC Pink market. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds, if not thousands of members in the proposed Class.

53.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

54.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

55.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the Exchange Act was violated by Defendants' acts as alleged herein;
- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business and financial condition of Harborside;
- whether Defendants' public statements to the investing public during the Class Period omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading;

- whether the Defendants caused Harborside to issue false and misleading filings during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false filings;

- whether the prices of Harborside securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

56.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

57.     Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Harborside shares were listed and actively traded on the OTC Pink market, an efficient market;

- As a public issuer, Harborside filed periodic public reports;

- Harborside regularly communicated with public investors via established market communication mechanisms, including through the regular dissemination of press releases via major newswire services and through other wide-ranging

public disclosures, such as communications with the financial press and other similar reporting services;

- Harborside securities were liquid and traded with moderate to heavy volume during the Class Period; and

- Harborside was followed by a number of analysts who wrote reports that were widely distributed and publicly available.

58. Based on the foregoing, the market for Harborside securities promptly digested current information regarding the Company from all publicly available sources and reflected such information in the prices of the securities, and Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

59. Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information as detailed above.

## COUNT I
### For Violations of Section 10(b) And Rule 10b-5 Promulgated Thereunder
### Against All Defendants

60. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

61. This Count is asserted against Defendants is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

62.     During the Class Period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

63.     Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they:

- employed devices, schemes and artifices to defraud;

- made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

- engaged in acts, practices and a course of business that operated as a fraud or deceit upon plaintiff and others similarly situated in connection with their purchases of Harborside securities during the Class Period.

64.     Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of Harborside were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated, or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the securities laws. These defendants by virtue of their receipt of information reflecting the true facts of Harborside, their control over, and/or receipt and/or modification of Harborside's allegedly materially misleading statements, and/or their associations with the Company which made them privy to confidential proprietary information concerning Harborside, participated in the fraudulent scheme alleged herein.

26 - CIVIL CLASS ACTION COMPLAINT

65.     Individual Defendants, who are the senior officers and/or directors of the Company, had actual knowledge of the material omissions and/or the falsity of the material statements set forth above, and intended to deceive Plaintiff and the other members of the Class, or, in the alternative, acted with reckless disregard for the truth when they failed to ascertain and disclose the true facts in the statements made by them or other Harborside personnel to members of the investing public, including Plaintiff and the Class.

66.     As a result of the foregoing, the market price of Harborside securities was artificially inflated during the Class Period. In ignorance of the falsity of Defendants' statements, Plaintiff and the other members of the Class relied on the statements described above and/or the integrity of the market price of Harborside securities during the Class Period in purchasing Harborside securities at prices that were artificially inflated as a result of Defendants' false and misleading statements.

67.     Had Plaintiff and the other members of the Class been aware that the market price of Harborside securities had been artificially and falsely inflated by Defendants' misleading statements and by the material adverse information which Defendants did not disclose, they would not have purchased Harborside securities at the artificially inflated prices that they did, or at all.

68.     As a result of the wrongful conduct alleged herein, Plaintiff and other members of the Class have suffered damages in an amount to be established at trial.

69.     By reason of the foregoing, Defendants have violated Section 10(b) of the 1934 Act and Rule 10b-5 promulgated thereunder and are liable to the plaintiff and the other members of the Class for substantial damages which they suffered in connection with their purchase of Harborside securities during the Class Period.

27 - CIVIL CLASS ACTION COMPLAINT

## COUNT II
### Violations of Section 20(a) of the Exchange Act
### Against the Individual Defendants

70.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

71.     During the Class Period, the Individual Defendants participated in the operation and management of Harborside, and conducted and participated, directly and indirectly, in the conduct of Harborside's business affairs. Because of their senior positions, they knew the adverse non-public information about Harborside's false financial statements.

72.     As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Harborside's financial condition and results of operations, and to correct promptly any public statements issued by Harborside which had become materially false or misleading.

73.     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Harborside disseminated in the marketplace during the Class Period concerning Harborside's results of operations. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause the Company to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of the Company within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Harborside securities.

74.     By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by the Company.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff, on behalf of himself and the Class, prays for judgment and relief as follows:

(a)     declaring this action to be a proper class action, designating plaintiff as Lead Plaintiff and certifying plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and designating plaintiff's counsel as Lead Counsel;

(b)     awarding damages in favor of plaintiff and the other Class members against all defendants, jointly and severally, together with interest thereon;

(c)     awarding plaintiff and the Class reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)     awarding plaintiff and other members of the Class such other and further relief as the Court may deem just and proper.

/////

/////

/////

/////

29 - CIVIL CLASS ACTION COMPLAINT

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated:  September 8, 2020

By: _____

Jeffrey S. Ratliff
**RANSOM, GILBERTSON, MARTIN &
RATLIFF, LLP**
8401 NE Halsey Street Suite 208
Portland, OR 97220
T: 503-226-3664

**THE ROSEN LAW FIRM, P.A.**
Phillip Kim, Esq.
Laurence M. Rosen, Esq.
275 Madison Avenue, 40th Floor
New York, NY 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: pkim@rosenlegal.com
        lrosen@rosenlegal.com
        *Counsel for Plaintiff*

# Certification and Authorization of Named Plaintiff Pursuant to Federal Securities Laws

The individual or institution listed below (the "Plaintiff") authorizes and, upon execution of the accompanying retainer agreement by The Rosen Law Firm P.A., retains The Rosen Law Firm P.A. to file an action under the federal securities laws to recover damages and to seek other relief against Harborside Inc.. The Rosen Law Firm P.A. will prosecute the action on a contingent fee basis and will advance all costs and expenses. The Harborside Inc.. Retention Agreement provided to the Plaintiff is incorporated by reference, upon execution by The Rosen Law Firm P.A.

| | |
|---|---|
| **First name:** | Rihanna |
| **Middle initial:** | |
| **Last name:** | Shahrohkimanesh |
| **Address:** | Redacted |
| **City:** | |
| **State:** | |
| **Zip:** | |
| **Country:** | |
| **Facsimile:** | |
| **Phone:** | |
| **Email:** | |

Plaintiff certifies that:

1. Plaintiff has reviewed the complaint and authorized its filing.

2. Plaintiff did not acquire the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in this private action or any other litigation under the federal securities laws.

3. Plaintiff is willing to serve as a representative party on behalf of a class, including providing testimony at deposition and trial, if necessary.

4. Plaintiff represents and warrants that he/she/it is fully authorized to enter into and execute this certification.

5. Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond the Plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.

6. Plaintiff has made no transaction(s) during the Class Period in the debt or equity securities that are the subject of this action except those set forth below:

Acquisitions:

| Type of Security | Buy Date | # of Shares | Price per Share |
|---|---|---|---|
| Common Stock | 03/26/2020 | 127 | 0.43 |
| Common Stock | 03/28/2020 | 270 | 0.38 |
| Common Stock | 04/01/2020 | 166 | 0.32 |
| Common Stock | 04/09/2020 | 81 | 0.31 |
| Common Stock | 04/28/2020 | 222 | 0.45 |

7. I have not served as a representative party on behalf of a class under the federal securities laws during the last three years, except if detailed below. [ ]

**Certification for Rihanna Shahrohkimanesh (cont.)**

I declare under penalty of perjury, under the laws of the
United States, that the information entered is accurate:      **YES**

By clicking on the button below, I intend to sign and execute
this agreement and retain the Rosen Law Firm, P.A. to
proceed on Plaintiff's behalf, on a contingent fee basis.      **YES**

Signed pursuant to California Civil Code Section 1633.1, et seq. - and the Uniform
Electronic Transactions Act as adopted by the various states and territories of the
United States.

Date of signing: 09/03/2020